IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ELI BROWN, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:02CV00862 |
| | ) | |
| MICHAEL C. FLOWERS, a/k/a | ) | |
| "MIKE CITY," | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

MEMORANDUM OPINION

TILLEY, Chief Judge

This case involves a dispute between the Plaintiff, Eli Brown and the Defendant, Michael C. Flowers over the terms of their partnership agreement. It is now before the Court on the Defendant's Motion for Summary Judgment [Doc. #27]. For the reasons set forth below, the Defendant's Motion for Summary Judgment will be GRANTED.

I.

The facts in the light most favorable to the Plaintiff are as follows: the Defendant, Michael Flowers, originally met the Plaintiff, Eli Brown, in the late 1980s while Mr. Flowers was a music student at North Carolina Central University in Durham, NC. Sometime in 1995, Mr. Flowers made an oral agreement to form a

1

partnership with Mr. Brown.[1]  The two parties agreed to call the partnership "Hectic Records" and to share all partnership revenues equally.  According to Mr. Brown, the Hectic Records partnership was formed in order to accomplish three objectives: 1) to produce low cost 12" vinyl recordings for "underground play in clubs"; 2) to provide engineering and remixing services to other recording artists; and 3) to market Mr. Flowers' songwriting talents and Mr. Brown's engineering and production skills to artists working for established labels.  (Brown Aff. ¶ 7.)

In order to promote the partnership, both Mr. Brown and Mr. Flowers traveled around the country marketing their services.  However, because Mr. Brown also held jobs in real estate development and construction, Mr. Flowers made most of these trips.  In addition, Mr. Brown gave Mr. Flowers a key to the recording studio located in his house in Durham, NC.  The studio had a separate entrance from that of the house and Mr. Brown and his family often came home to find Mr. Flowers working in the studio alone.  By 1999, Mr. Brown and Mr. Flowers had "hundreds of demos recorded for use in promotion of the partnership." (Brown Aff. ¶ 8.)

In 1996, the Hectic Records partnership began work on an album for the rap group, "Lost Souls."  This album included a track by the Durham-based singer, Sunshine Anderson.  Mr. Brown worked on the production and engineering

---

[1] Neither party disputes that a partnership was formed between Mr. Flowers and Mr. Brown.

components of the album while Mr. Flowers focused on marketing the album. Mr. Flowers ultimately secured a distribution deal with Ichiban Records ("Ichiban") for the "Lost Souls" album. In connection with this deal, Mr. Flowers signed an agreement with Mr. Brown extending the deal with Ichiban to the Hectic Records partnership. In this agreement, the parties also expressed their intent to incorporate the partnership at some future date. See Defendant's Exhibit II, Agreement between Michael C. Flowers and Eli Brown d/b/a Hectic Records. The Hectic Records partnership also hired Gerald Crump to promote the "Lost Souls" album. Mr. Brown provided the funds to pay Mr. Crump for his services. Despite these efforts, the "Lost Souls" album was not a commercial success.

The Hectic Records partnership also released an album featuring North Carolina based artists in 1997. This album was released under the title "Mike City Presents the North Carolina Project," but, again, failed to generate much commercial success for the Hectic Records partnership. Mr. Brown also provided funds for the marketing and promotion of the "North Carolina Project."

During this time, both Mr. Brown and Mr. Flowers continued to make promotional trips on behalf of the partnership. In the fall of 1999, Mr. Flowers made a trip to New Jersey and New York that Mr. Brown believed was intended to promote the Hectic Records label. Soon afterwards, Mr. Brown learned that one of Mr. Flowers' songs was getting significant "air time" on a radio station in New Jersey. In early 2000, Mr. Brown had a series of conversations with Mr. Flowers

3

in which Mr. Flowers acknowledged that he had sold "a couple of songs" to the singer Carl Thomas and told Mr. Brown that he "could expect to get a check from Puffy Combs." (Brown Aff. ¶ 17.) Mr. Brown assumed that these songs had been recorded in his Durham studio and thus were Hectic Records material. However, in a later conversation, Mr. Flowers told Mr. Brown "that we were done, that he wouldn't work with me again, that he didn't need me, and that I [would] never get any money." Id.

Mr. Brown filed suit against Mr. Flowers in the United States District Court for the Middle District of North Carolina on October 8, 2002, asserting several claims under both federal and state law [Doc. # 1]. Mr. Brown alleges that Mr. Flowers violated the Copyright Act of 1976, 17 U.S.C. §§ 101-1101, by failing to share copyright royalties with him. Mr. Brown also contends that Mr. Flowers breached the Hectic Records partnership agreement and therefore asserts state law claims for breach of contract, breach of fiduciary duty, fraudulent concealment, and unfair trade practices. He also seeks an accounting of the Hectic Records partnership assets and expenses under N.C. Gen. Stat. § 59-52.[2]

Mr. Flowers moved to dismiss the Plaintiff's copyright claims on January 15, 2003, but did not address Mr. Brown's state law claims [Doc. # 8]. The Court granted the Defendant's Motion to Dismiss the Plaintiff's copyright claims in an

---

[2]N.C. Gen. Stat. § 59-52(1) provides that a partner "shall have the right to a formal account as to partnership affairs if he is wrongfully excluded from the partnership business or possession of its property by his copartners."

4

order filed on December 12, 2003 [Doc. # 14]. Mr. Flowers' current motion seeks summary judgment on the Plaintiff's state law claims [Doc. # 27].

II.

Summary judgment is proper only when there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e). The material facts are those identified by controlling law as essential elements of claims asserted by the parties. In other words, the materiality of a fact depends on whether the existence of the fact could cause a jury to reach different outcomes. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001). An issue is genuine as to such facts if the evidence is sufficient for a reasonable trier of fact to find in favor of the nonmoving party. Anderson, 477 U.S. at 248. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In evaluating a motion for summary judgment, the court must view the facts and inferences reasonably to be drawn from them in the light most favorable to the nonmoving party. See Fed. R. Civ. P. 56(e). Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. Anderson, 477 U.S. at 249. In essence, the analysis concerns "whether the evidence presents a sufficient disagreement to require submission to a jury or

5

whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. Trial is unnecessary if "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." Mitchell v. Data General Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993).

The party opposing the motion may not rest upon its pleadings but must instead provide evidence or point to evidence already on the record that would be sufficient to support a jury verdict in its favor. Anderson, 477 U.S. at 248. In addition, any supporting or opposing affidavits should be based on the personal knowledge of the affiant and should describe facts that would be admissible in evidence. See Fed. R. Civ. P. 56(e).

III.

The Plaintiff, Eli Brown contends that the Defendant, Michael Flowers, breached the Hectic Records partnership agreement by failing to share half of those "monies earned by Flowers using music produced in Brown's Durham recording studio." (Compl. ¶ 35.) And for failing to "share the proceeds of recording contracts [Mr. Flowers] has received from established record labels, artists and production companies." Id. However, the facts viewed in the light most favorable to the non-moving party do not support Mr. Brown's claims.

Mr. Brown has failed to provide sufficient evidence to create a genuine issue of material fact as to whether Mr. Flowers violated the terms of the Hectic Records partnership agreement. By Mr. Brown's own admission, the partnership was

6

intended to "produce a number of low cost 12" vinyl recordings for underground play in clubs," provide engineering and remixing services for other artists, and "make [Mr. Flowers'] writing ability and [Mr. Brown's] engineering and production abilities for use by artists already working for established labels." (Brown Aff. ¶ 7.) Mr. Brown does not explain how any of Mr. Flowers' activities violated this agreement.

In his complaint, Mr. Brown alleges that Mr. Flowers' took two songs (in addition to a number of other works that he does not identify) from the Hectic Records studio. (Compl. ¶¶ 12-19.) One of these songs, entitled "I Wish" was recorded by Carl Thomas and the other, entitled, "Lunch or Dinner?," by Sunshine Anderson. However, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (internal citations omitted). Mr. Brown does not present any evidence that the songs in question were either written or recorded in the Hectic Records studio or that he contributed in any fashion to their creation.[3] He has not offered facts from which a fact finder could determine that the songs

---

[3] In fact, Mr. Brown's affidavit does not discuss the Sunshine Anderson song, "Lunch or Dinner?." Instead, Mr. Brown relies on the affidavit of his wife, Velvet Brown, whose statement of facts concerning Ms. Anderson's "Lunch or Dinner?" is presented as being her belief and not as coming from her personal knowledge. It may not, therefore, be considered as evidence since it would not be admissible at trial.

7

belonged to Hectic Records. He does not claim that the Hectic Records partnership agreement required the two partners to work exclusively on behalf of the partnership. Nor does he argue that the agreement prohibited Mr. Flowers from pursuing music ventures on his own. In short, Mr. Brown has not provided any evidence from which a fact finder could conclude that the Hectic Records Partnership agreement extended to the work Mr. Flowers performed for Carl Thomas' "I Wish" or Sunshine Anderson's recording of "Lunch or Dinner?".

Finally, Mr. Brown alleges that he paid for many of the promotional and marketing trips that Mr. Flowers made on behalf of Hectic Records: "I was working from the assumption that when Mike took these many promotional trips, many of which I paid for, that he was promoting the partnership." (Brown Aff. ¶ 14.) However, not only does Mr. Brown fail to provide any evidence of when these trips took place or how much he spent on them, he does not give any reason for his belief that they were made on behalf of the partnership. "Mere speculation by a non-moving party cannot create a genuine issue of material fact." Cox, 249 F.3d at 299 (internal citations omitted). In addition, while Mr. Brown also claims that he spent considerable sums of money on equipment for his Durham recording studio at Mr. Flowers' request, he also admits that these expenditures were made before the Hectic Records partnership was even formed. (Brown Aff. ¶ 6.)

Because Mr. Brown has failed to provide sufficient evidence to create a genuine issue of material fact as to whether Mr. Flowers violated the terms of the

8

Hectic Records partnership agreement, Mr. Flowers' Motion for Summary Judgment is GRANTED.

IV.

For the reasons set forth above, Defendant's Motion for Summary Judgment will be GRANTED.

This the day of September 14, 2005

                /s/ N. Carlton Tilley, Jr.
                United States District Judge